UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Joshua Sherman Bradley** | : | |
| **14333 Countyhome Road** | : | |
| **Marysville, Ohio 43040** | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | Case No. |
| v. | : | |
| | : | |
| Ricky Garrison | : | |
| Union County Sheriff's Office | : | |
| 221 W. 5th Avenue | : | |
| Marysville, Ohio 43040 | : | |
| | : | |
| and | : | |
| | : | |
| Seth McDowell | : | |
| Union County Sheriff's Office | : | |
| 221 W. 5th Avenue | : | |
| Marysville, Ohio 43040 | : | |
| | : | |
| *Defendants.* | : | JURY DEMAND ENDORSED |
| | : | HEREON |
| | : | |

## COMPLAINT

This case arises out of the wrongful criminal prosecution against Plaintiff Joshua Bradley that was conducted by Defendant Ricky Garrison and Defendant Seth McDowell, two law enforcement officers who worked as detectives for the Union County Sheriff's Office.

## PARTIES

1. Plaintiff Joshua Bradley is a resident of Marysville, Ohio, located in Union County, in the Southern District of Ohio.

2. Defendant Ricky Garrison and Defendant Seth McDowell are or were at all times relevant, duly sworn and active law enforcement officers, employed by the Union County Sheriff's Office.

3. Defendants are being sued in their individual capacities.

## JURISDICTION

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331, this being a civil action arising under the Constitution and the laws of the United States.

5. Jurisdiction is also conferred upon this Court pursuant to 28 U.S.C. §§1343(a)(3) and (4), and 42 U.S.C. §§1983 and 1988, this being an action for damages authorized by law to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution of the United States.

6. The incident that is the subject of this action occurred in Marysville, Ohio, in Union County.

7. Because this District is the district within which Defendants reside and moreover, encompasses the area in which the events concerned took place, venue is proper under 28 U.S.C. §1391(b)(1-2).

## STATEMENT OF FACTS

8. In or around December 2022, Plaintiff Josh Bradley purchased a white Dodge Charger from two individuals, Michael Ferryman and Abigail Hamilton. The total purchase price for the vehicle was $10,000, requiring an initial cash payment of $5,500, followed by monthly payments towards the balance of the loan on the vehicle.

9. After Plaintiff paid Michael Ferryman and Abigail Hamilton the initial cash payment of $5,500, Ferryman and Hamilton gave Plaintiff possession and control of the vehicle along with documentation evidencing ownership. This documentation included registration and insurance paperwork reflecting Abigail Hamilton as the owner of the vehicle.

10. On December 27, 2022, while Plaintiff was alone in Marysville, Ohio, and driving the recently purchased white Dodge Charger, Ohio State Patrol Officer Alex Wargo conducted a traffic stop. During the stop, Officer Wargo advised Plaintiff that the Dodge Charger was believed to be stolen.

11. When given the opportunity, Plaintiff explained to Officer Wargo that he lawfully purchased the vehicle from Michael Ferryman and Abigail Hamilton, and that they provided him with documentation evidencing ownership.

12. During the traffic stop, Defendant Union County Sheriff's Office Detective Ricky Garrison and Defendant Union County Sheriff's Office Detective Seth McDowell appeared on the scene. Detectives Garrison and McDowell were familiar with Plaintiff and his family members and had interactions with them in the past. Plaintiff and his family members have a lengthy history involving numerous interactions with law enforcement officers from the Union County Sheriff's Office. During these interactions, law enforcement officers would refer to the relationship between their office and Plaintiff's family members as something similar to the feud between the "Hatfields and McCoys."

13. After Detectives Garrison and McDowell arrived on the scene, Plaintiff again explained the steps he took to purchase the white Dodge Charger and how he came into possession of the vehicle. Detectives Garrison and McDowell knew that if Plaintiff's story were true, it would render Plaintiff's actions as entirely lawful.

14. After listening to Plaintiff, but before taking any steps to verify Plaintiff's truthful explanation, Detectives Garrison and McDowell placed Plaintiff under arrest and took him to the Tri-County Jail. Plaintiff was also charged with receiving stolen property, a felony of the fourth degree.

15. The following morning on December 27, 2022, Plaintiff appeared before a Marysville County Municipal Court Judge for his initial appearance and bond hearing. On the same day, Plaintiff arranged for the payment of a $5,000 bond and was subsequently released from jail. Plaintiff also retained criminal defense attorney Jim Owen to represent him.

16. Shortly after Plaintiff was released from jail, Detectives Garrison and McDowell appeared at Plaintiff's home unannounced. They advised Plaintiff that "his story checked out." Specifically, Garrison and McDowell advised that they interviewed Michael Ferryman and Ferryman's neighbors. Garrison and McDowell shared that Ferryman denied knowing anything about the white Dodge Charger. However, during their interviews with Ferryman's neighbors, Garrison and McDowell learned that the white Dodge Charger had been sitting at Ferryman's residence for two years.

17. During the unannounced home visit with Plaintiff, Detectives Garrison and McDowell advised that because of their office's feud with Plaintiff and his family members, they intended to proceed with felony charges and expressly referenced the Hatfield-McCoy feud as the basis for their decision.

18. On January 4, 2023, Attorney Jim Owen spoke to Detective Garrison by phone. During the phone conversation, Garrison confirmed with Attorney Owen the same thing that he confirmed with Plaintiff during his unannounced visit: that Plaintiff's story was true, and Plaintiff did not knowingly possess a stolen vehicle. Garrison also advised that he would still be seeking an indictment against Plaintiff.

19. During the phone conversation between Attorney Owen and Detective Garrison, Owen expressly asked Garrison to include the exculpatory information with the grand jury packet and/or the investigative file that law enforcement officers compile and submit to the prosecutor for presentment to a grand jury. Specifically, Owen requested that the information that Detectives Garrison and McDowell obtained that verified that Plaintiff's story was true, be included in the grand jury packet. Following the phone call, but on the same day, Attorney Owen documented the conversation he had with Detective Garrison in his calendar.

20. To achieve their stated goal in furtherance of the Hatfield-Mccoy feud, and in the course of setting the prosecution in motion, Detectives Garrison and McDowell knowingly omitted the exculpatory information obtained during their investigation from the grand jury packet. This intentionally omitted exculpatory information proved that Plaintiff was innocent.

21. Detective Garrison and Detective McDowell's decision to omit the exculpatory information from the grand jury packet they prepared was material to the ultimate prosecution of Plaintiff.

22. Defendants' intentional and critical omission of material evidence operated to mislead the Union County Prosecutor and the grand jury.

23. On January 5, 2023, a Union County grand jury indicted Plaintiff on one count of receiving stolen property, a felony of the fourth degree. The grand jury packet did not include any of the critical and materially exculpatory information obtained during Detectives McDowell and Garrison's investigation.

24. The exculpatory information obtained and intentionally withheld by Detectives McDowell and Garrison demonstrated that there was no probable cause to support the charges against Plaintiff.

25. On January 12, 2023, Attorney Owen spoke to Assistant Union County Prosecutor Raymond Kelly Hamilton by phone. The purpose of the phone conversation was to request that, in light of Detective McDowell and Detective Garrison's investigation, Plaintiff should not have been indicted. Prosecutor Hamilton indicated that he had no recollection of being advised of any this or any other exculpatory information that was obtained by Detectives McDowell and Garrison.

26. Following the indictment, the Union County Sheriff's Office served Plaintiff with a summons to appear for his arraignment. Plaintiff then retained Attorney Owen to represent him in the felony case pending in the Union County Common Pleas Court.

27. On February 8, 2023, Plaintiff appeared for his arraignment and entered a plea of not guilty. Plaintiff was also ordered to comply with a series of bond conditions that included:

    a. Being required to appear at all court hearings;

    b. Being required to routinely report to a designated pretrial officer;

    c. Being subject to routine drug screens; and

    d. Not being permitted to leave the State of Ohio.

28. Upon information and belief, Plaintiff reported in person to his designated pretrial officer on February 8, 2023, February 14, 2023, and April 18, 2023. Plaintiff was also subjected to urine screen tests on those dates.

29. While the criminal felony case was pending, Jeff Chambers, the owner of Sportscape Builders offered Plaintiff a job opportunity to work in the state of Florida on commercial construction projects that arose as a result of hurricane damage that occurred in 2022. The work was substantial and immediate.

30. Because of the bond conditions prohibiting Plaintiff from traveling outside of the State of Ohio, Plaintiff lost this substantial and immediate opportunity to work for Sportscape Builders.

31. On April 18, 2023, Assistant Union County Prosecutor Raymond Kelly Hamilton filed a motion to dismiss the indictment against Plaintiff. The criminal case was dismissed on the same day.

32. All of the said acts by the Defendants were done within the scope of their employment; under color of state law, recklessly, wantonly, in bad faith and/or maliciously.

33. Any reasonable law enforcement officer would have understood that it was unlawful to engage in the conduct alleged above. Additionally, Defendants were trained in the relevant topics such as the definition of probable cause, the need for trustworthy information to support

probable cause, the requirement that exculpatory evidence be included in the probable cause analysis, and the prohibitions against suppressing known evidence. Further, Defendants were subject to departmental rules and regulations setting out these various duties and standards.

## CLAIMS FOR RELIEF

### Count One: Malicious Prosecution in violation of 42 U.S.C. §1983 and the Fourth Amendment – as to both Defendants

34. Plaintiff incorporates by reference the allegations above, as if fully restated herein.

35. Defendants knowingly, intentionally and deliberately made, influenced and/or participated in the decision to prosecute Plaintiff.

36. Defendants lacked probable cause.

37. As a consequence of the proceeding against him, Plaintiff suffered a deprivation of liberty apart from the initial seizure.

38. Defendants further perpetrated malicious prosecution by supporting these false charges against Plaintiff with knowingly false statements and/or intentional omissions.

39. The proceedings against Plaintiff were terminated in his favor when the charge against him was dismissed.

40. Defendants' actions constitute malicious prosecution, in violation of the Fourth Amendment and 42 U.S.C. §1983. Defendants initiated the prosecution, continued the prosecution, participated in the decision to prosecute and/or influenced the decision to prosecute Plaintiff, all without probable cause.

41. Defendants' actions were the direct and proximate cause of damages to Plaintiff, including but not limited to: the loss of liberty; loss of income; inconvenience, embarrassment, humiliation, extreme mental and emotional upset and anguish endured as a result of the criminal indictment bereft of probable cause; and other damages, which will be more fully set

forth and proven at the trial of this matter. Plaintiff was also forced to incur legal expenses defending the criminal prosecution.

### **Count Two: Civil Conspiracy in violation of 42 U.S.C. §1983 – as to both Defendants**

42. Plaintiff incorporates by reference the allegations above, as if fully restated herein.

43. Defendants' actions constitute conspiracy to violate Plaintiff's constitutional rights.

44. Defendants combined and acted in concert, and entered into an agreement to injure Plaintiff by unlawful means. A plan was put in place to prosecute and convict Plaintiff, Defendants shared the objective to engage in these unlawful acts, and overt acts were committed in furtherance thereof.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, for compensatory and punitive damages, in an amount which will fully and fairly compensate him for his injuries therein; reasonable attorney fees and his other costs; and any such other relief to which Plaintiff is legally entitled.

Respectfully submitted,

PETERSON LAW LLP

/s/ Rasheeda Khan
Rasheeda Khan (0075054)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
614.365.7000 *Office*
614.745.8845 *Direct*
614.220.0197 *Facsimile*
rkhan@peterson-llp.com *E-mail*
*Counsel for Plaintiff Joshua Bradley*

## JURY DEMAND

Plaintiffs hereby demand a trial by a jury of eight (8) as to all triable issues thereto.

                                                */s/Rasheeda Z. Khan*

                                                Rasheeda Z. Khan (0075054)